Argued March 28, reversed and remanded May 30, 1978

## OULLETTE, *Petitioner,*
### *v.*
## EMPLOYMENT DIVISION et al, *Respondents.*
### (No. 77-AB-1179, CA 9305)

579 P2d 301

David W. Hittle, Salem, argued the cause for petitioner. With him on the brief was Dye & Olson, Salem.

Chris L. Mullman, Portland, argued the cause and filed the brief for respondent Pacific Northwest Bell Telephone Company.

No appearance for respondent Employment Division.

Before Schwab, Chief Judge, and Johnson, Gillette and Roberts, Judges.

JOHNSON, J.

## JOHNSON, J.

Petitioner appeals from the decision of the Employment Appeals Board (Board) denying him unemployment compensation. The issue is whether there was substantial evidence to support the Board's conclusion that petitioner engaged in misconduct[1] by misrepresenting his physical condition and ability to work for purposes of obtaining workers' compensation benefits.

Petitioner was employed as a telephone installer. In April, 1975, petitioner suffered a back injury in a work-connected automobile accident. He received treatment and returned to work about a month later. He had intermittent periods of work and absence due to the back injury until August 3, 1976, when he left work for the last time. Petitioner filed for and received a workers' compensation award by determination order of July, 1976. In August, 1976, he filed a claim with the Workers' Compensation Board for aggravation. The aggravation claim was denied by the employer in September of 1976, and petitioner appealed both this denial and the original determination order.

At about this time, petitioner obtained a release from his doctor to return to work but was not allowed

---

[1] ORS 657.176 provides in pertinent part:

"(1) An authorized representative designated by the assistant director shall promptly examine each claim to determine whether an individual is subject to disqualification as a result of his separation, termination, leaving, resignation, or disciplinary suspension from work or as a result of the individual's failure to apply for or accept work and shall promptly enter an assistant director's decision if required by subsection (4) of ORS 657.265.

"(2) If the authorized representative designated by the assistant director finds:

"(a) The individual has been discharged for misconduct connected with his work * * *

"* * * * *

"the individual shall be disqualified from the receipt of benefits until he has performed service for which remuneration is received equal to or in excess of his weekly benefit amount in four separate weeks subsequent to the week in which the act causing the disqualification occurred."

[ 593 ]

to return because the employer's medical staff felt petitioner's condition was not medically stationary. Petitioner remained at home, and every week from September, 1976 to March, 1977, filed with the employer an "Employee's Weekly Report of Disability."

During this period, petitioner's supervisor visited him at home weekly to bring him the disability form and to discuss his condition. During the visits of March 3 and 17, 1977, petitioner told his supervisor he was in "bad shape," and that he could do very little work. On March 24 and 25, 1977, petitioner was filmed at his farm engaging in strenuous activity lifting and placing heavy fence posts, operating a tractor and pushing a truck out of the mud.

On March 30, 1977, petitioner testified at his workers' compensation hearing that he couldn't do anything strenuous or do much lifting, bending or squatting. He also testified that he felt he could not return to the light work he had been doing for the employer without substantial rest periods. However, when confronted with the evidence of strenuous activity on the surveillance films, petitioner admitted that he had done everything shown on the film. The Workers' Compensation Board referee found that petitioner had failed to show that his condition had worsened and denied his aggravation claim. The employer later discharged petitioner for misrepresenting his disability in violation of the employer's standards of conduct, "CI-24."[2]

---

[2] "CI-24," the employer's Company Instruction 24 containing standards of conduct for the employees, provides in part:

"2.12—The following is the Basic Standard of Conduct:

"Employees of this Company shall at all times practice fundamental honesty.

"As part of this Basic Standard, employees shall not do or attempt to do any of the following: deceive, defraud, or mislead the Company, other employees, or those with whom the Company has business or other relationships; take or misuse Company property, funds, or service; * * *

"* * * * *

■ Petitioner maintains that as a matter of law his statements and testimony regarding his physical condition were not misrepresentation amounting to "misconduct" under ORS 657.176(2)(a) because they were merely evidence of disability rebutted by evidence offered by the employer. We disagree. In *Geraths v. Employment Division,* 24 Or App 201, 204, 544 P2d 1066 (1976), we defined "misconduct" within the meaning of ORS 657.176(2)(a) as:

> "* * * [A]n act of wanton or wilful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has a right to expect of his employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent, or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer. * * *" (Quoting from 76 Am Jur 2d 945 (1975)).

Under the circumstances presented here, the Board could reasonably conclude, as it did, that petitioner's statements and testimony were more than mere evidence of his disability and constituted "an act of wanton or wilful disregard of the employer's interests evidencing an *intentional* and *substantial* disregard of that interest." (Emphasis supplied.)

---

"Violation of Standards of Conduct

"2.14—

"Every employee should understand that any violation of the Basic Standard of Conduct, or any of the specific rules of individual conduct contained in these instructions, will subject the employee to disciplinary action, including dismissal.

"* * * * *

"Personal Standards of Conduct

"* * * * *

"2.71—Some examples (but not to the exclusion of other similar items falling under the Basic Standards of Conduct) are as follows:

"Full Day's Work for Full Day's Pay

"2.7101—How employees make use of their time on the job also involves fundamental honesty. Any waste of time is costly. All employees shall do a Full Day's Work for a Full Day's Pay.

"* * * * *."

Petitioner also contends that there was not substantial evidence to support the Board's findings and conclusions. Specifically, petitioner challenges the Board's Findings No. (9) and (11). Finding No. (9) provides:

> "From August 1976 until the claimant's formal termination on May 14, 1977, he executed weekly statements of disability certifying that he was unable to work due to a bad back. (Exh. 14)."

Petitioner admits that he filled out the weekly disability reports, but argues that the portions of the forms he completed were consistent with his claimed desire to return to work. The forms are entitled "Employee's Weekly Report of *Disability.*" (Emphasis supplied.) On them petitioner consistently indicated that the nature of his injury or illness was a "bad back" or "back trouble" and that he did not know when he would be able to return to work. This was substantial evidence to support the Board's finding.

Finding No. (11) provides:

> "On these occasions [home visits by petitioner's supervisor], the claimant complained of his condition and stated he was not capable of working a full shift performing the light duty of removing telephone sets."

This finding is not accurate. The record indicates that petitioner "complained" of his condition to his supervisor during some but not all of the home visits, and that he made the statement that he was not capable of working a full shift performing light duty work for the employer at his workers' compensation hearing and not during home visits by the supervisor. It may be that the Board's Finding No. (11) was merely an inartful statement reflecting this evidence—evidence which was sufficient to support its conclusion of misconduct. However, the finding, as written, is not supported by substantial evidence. *See Palen v. State Bd. of Higher Education,* 18 Or App 442, 525 P2d 1047, *rev den* (1974).

Reversed and remanded for an order supported by appropriate findings.